# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL HILL,

    Plaintiff,

  v.

CITY OF CHICAGO,
PROFIRIO SANTIAGO, and
RUBEN REYNOSO,

    Defendants.

No. 12 CV 9513

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Chicago Police Officers Profirio Santiago and Ruben Reynoso suspected that Michael Hill had been involved in a hand-to-hand drug deal. They approached and detained Hill. Reynoso handcuffed him, hurting Hill's wrist in the process, and searched Hill. The officers released Hill ten to thirty minutes later without charging him with any crime. In this case, Hill alleges that Santiago and Reynoso violated his constitutional rights by unreasonably seizing and searching him, and by using excessive force in handcuffing him. His claims are based on 42 U.S.C. § 1983. The City of Chicago is named as a defendant by virtue of the indemnification provisions of Illinois state law. Defendants move for summary judgment, Fed. R. Civ. P. 56, and argue that there is no factual dispute as to either substantive liability or their qualified immunity defense. For the reasons discussed below, I grant the defendants' motion.

Summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I view the facts—and draw any reasonable inferences from those facts—in the light most favorable to Hill.

I. **The Facts**

*The Initial Surveillance and Police Activity*

A longtime, reliable informant for the Chicago Police Department told Officer Martin Obrecki that a middle-aged black man, of average weight and between 5′9″ and 6′1″ tall, dealt drugs in the morning-to-midday timeframe in the vicinity of 712 W. Diversey in Chicago. The informant said that the drug dealer came out of the building at 712 W. Diversey with drugs on his person and sold the drugs in hand-to-hand deals on the street or in people's cars. [75] at ¶¶3–4.[1] The structure at 712 W. Diversey is a nine-story apartment complex. [76] at ¶2.

Shortly after getting this tip on the morning of June 13, 2012, the police set up an operation near 712 W. Diversey. Defendants Santiago and Reynoso were part of the operation, with Obrecki conducting covert surveillance and relaying information to the other officers. [75] at ¶¶3, 6–9. Around 11:22 a.m., Obrecki saw a hand-to-hand drug deal take place in a car. A man matching the informant's description of the drug dealer got into a car, and the driver gave the man cash in exchange for something. The man got out of the car and went into the building at

---

[1] Citations to the record are designated by the document number on the district court docket, placed in brackets. Most of the facts related in this opinion are taken from Defendant's Reply to Plaintiff's Response to Defendant's Statement of Material Facts, [75], where the parties' positions concerning most of the facts are set forth in a single document.

2

712 W. Diversey. Obrecki relayed this information to the other officers. [75] at ¶¶10–11. Officers stopped the car, recovered crack cocaine from the driver, and relayed this information to the rest of the enforcement team, including Reynoso and Santiago. [75] at ¶¶12–13.

*The Stop of Hill*

At 11:30 a.m., Obrecki saw a man come out of 712 W. Diversey. Obrecki thought the man both fit the informant's description of the drug dealer and was the man who did the hand-to-hand deal in the car a few minutes earlier. Although Obrecki saw only the back of the drug dealer's head during the hand-to-hand deal, he believed the man coming out of the building was the same man because he fit the description and was the only person to come out of the building. *See* [75] at ¶14.[2] Hill lived in an apartment at 712 W. Diversey, walked out of that building at 11:30 a.m., and fit the description provided by the informant. [75] at ¶¶15–17.[3]

Sometime after 11:30 a.m., Reynoso and Santiago heard Obrecki say over the radio that he now saw the man he had previously seen sell drugs. Obrecki said that this man was walking westbound on Diversey, and was wearing tan pants. Obrecki instructed the enforcement cars to stop this person. Reynoso and Santiago saw Hill

---

[2] Hill points out the fragility of Obrecki's belief—he didn't get a good look at the dealer during the hand-to-hand deal, and was making an inferential leap based on the fact that the man walking out of the building generally fit the earlier description. I accept Hill's view that Obrecki's belief was uncertain. Nevertheless, Hill does not dispute the fact that Obrecki believed the man—Hill—to be the same man he saw earlier.

[3] Given Hill's concession that he walked out of the building at 11:30, and that he matched the informant's description, and the absence of any evidence to suggest someone else also walked out at 11:30, I find that there is no genuine dispute that Hill was the man Obrecki saw at 11:30. *See* [75] at ¶15. At approximately 12:00 p.m., another man walked out of the building, and also matched the description from the informant. This man acted suspiciously and was arrested with drugs on his person. [75] at ¶¶20–22, 63–64. According to Hill, this man "looks a lot like" Hill. [75] at ¶65.

3

by the intersection, wearing tan pants. Officer Obrecki confirmed to Reynoso and Santiago that Hill was the correct person. [75] at ¶¶26–27.

The parties dispute the details of the initial interaction between the defendants and Hill, so I accept Hill's version for purposes of this motion. Reynoso and Santiago drove up to Hill. Hill saw them and froze. One of the defendants told Hill to put his hands on the officers' car. According to Hill, he immediately complied (although Hill also testified that he initially froze and first asked the defendants why they were stopping him). [75] at ¶¶30–32.[4] Hill put his hands on the car, but it was hot, so he immediately lifted his hands off the car. Reynoso told Hill again to put his hands on the car, and Hill complied. [75] at ¶¶34–35.

### *The Search and Handcuffing of Hill*

Reynoso initiated a search of Hill. He lowered the waistband of Hill's pants, and felt around the seams of the waistband. [75] at ¶¶37–38. Reynoso patted the groin area on the outside of Hill's pants (he did not make skin-to-skin contact with Hill's genitals). [75] at ¶42. Reynoso also patted down the length of Hill's pants, and ran his fingers inside Hill's socks. [75] at ¶50. Reynoso patted Hill down from his collar, chest, and arms down to Hill's ankles. [75] at ¶51. Reynoso felt an object inside one of Hill's pants pockets, reached into the pocket, and retrieved a cell phone charger and Hill's identification. [75] at ¶52.

---

[4] Defendants, citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985), urge me to reject parts of Hill's version of events as internally inconsistent with other parts of his deposition testimony. Unlike cases where a non-movant submits a later affidavit that is inconsistent with earlier deposition testimony, here, the arguable inconsistencies are within the same deposition. Under those circumstances, at the summary judgment stage, it is best to consider the testimony as a whole in the light most favorable to the non-movant. I decline to reject some of Hill's deposition testimony as inconsistent with other parts of his deposition, and instead will view the entirety of the deposition in his favor.

Hill testified that during the search of his waistband, Reynoso rolled Hill's pants in a manner that exposed two to three inches of Hill's buttocks. *See* [54-5] at 9 (Hill Deposition at p. 106, ll. 1–4); *see also* [75] at ¶¶40–41. Defendants argue that this testimony is inconsistent with Hill's testimony that he was wearing boxer-style underwear with an elastic waistband, and his underwear was not lowered. [75] at ¶40. Hill did testify that Reynoso left his underwear in place, but I find that the testimony is not so inconsistent that the two statements are mutually exclusive. When discussing the details of the search, Hill repeatedly said his buttocks were exposed, and viewing the entirety of his deposition in the light most favorable to him, I find that Hill may have meant that his underwear was not lowered entirely and was largely left in place, while still exposing the relatively small amount of skin (two to three inches) that Hill said was bared.

During the search, Hill pulled his hands away from the police car and grabbed his pants to prevent them from falling down. [75] at ¶43. Reynoso ordered Hill to put his hands back on the car, but Hill froze. [75] at ¶44. Reynoso then took Hill's right wrist, and pulled it behind Hill's back in order to handcuff him. [75] at ¶45. Reynoso twisted Hill's wrist to bring it up, Hill felt a pop, and it hurt. *Id.* Before Reynoso put the handcuffs on Hill, Hill told Reynoso that Reynoso was hurting Hill. [75] at ¶46. Reynoso told Hill not to cry like "a bitch or like a baby . . . ; it was a B-word." [54-5] at 15 (Hill Deposition at p. 134, ll. 7–9); *see also* [75] at ¶61. Reynoso handcuffed both of Hill's wrists. [75] at ¶47.[5] Hill's demonstration of the

---

[5] Hill does not dispute that Reynoso handcuffed both of Hill's wrists, but also points to Santiago's testimony that Santiago put one cuff around Hill's left wrist. [75] at ¶48. Hill testified that Santiago

5

manner in which Reynoso handcuffed him was video-recorded at Hill's deposition and is part of the record. [54] Exh. 11. During the demonstration, Hill said that the twisting and movement of his wrist was not extreme. *Id.*; [75] at ¶45.

*Hill's Release*

After Santiago checked Hill's identity, he gestured to Reynoso, they removed the handcuffs, and released Hill. [75] at ¶54–57. Defendants contend that the entire interaction with Hill took no longer than 10 minutes; Hill testified that it lasted probably less than 30 minutes. [75] at ¶58. There is no dispute that Hill was first spotted at 11:30 a.m., and that another suspect was stopped (by Reynoso and Santiago) at 12:00 p.m. [75] at ¶¶15, 63. Therefore, the observation, stop, search, handcuffing, and release of Hill almost certainly took less than 30 minutes.

## II. The Seizure Claim

Hill first alleges an unconstitutional seizure claim against Reynoso and Santiago. The Fourth and Fourteenth Amendments prohibit unreasonable seizures by the police, but if Reynoso and Santiago had probable cause to arrest Hill, the seizure was constitutional, and defendants are not liable under § 1983. *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). If, at the time they seized Hill, Reynoso and Santiago had reasonably trustworthy information sufficient to warrant a "prudent man" in believing Hill had committed an offense, they had probable cause to arrest him.

---

was "quite cordial" and that Santiago (the "partner" in Hill's recitation of events) never put his hands on Hill. [54-5] at 17 (Hill Deposition at p. 144, ll. 11–20). Even assuming that Santiago assisted the handcuffing in some way, I find there is no genuine factual dispute that the use of force in the handcuffing is entirely attributable to Reynoso, and not Santiago.

6

*Reynolds*, 488 F.3d at 765. The officers did not have to be correct. Their subjective assessment of the facts and their state of mind are not relevant. *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

I note that "[w]hether the known facts add up to probable cause is a legal question for the judge, not a subject on which jurors are entitled to form their own opinions." *Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013).

The undisputed facts establish that Reynoso and Santiago knew: that a longtime, reliable informant had described a drug dealer at a particular location; that shortly after receiving the tip, Obrecki corroborated the information (including the time, place, and manner of drug dealing and the description of the offender) by observing a hand-to-hand drug deal; the information was further corroborated by the seizure of drugs from the customer; and that Obrecki—an eyewitness to a crime—specifically identified Hill as "the correct person," the man he saw conduct the hand-to-hand transaction immediately preceding the seizure of crack.

This was abundant evidence to support probable cause from the perspective of an objective, prudent person. *See United States v. Johnson*, 655 F.3d 594, 601 (7th Cir. 2011) (informant corroborated by surveillance provided probable cause); *see also Bridewell*, 730 F.3d at 676 (police entitled to draw on eyewitness descriptions).

Hill argues that the informant's description of a middle-aged black man was too generic to support probable cause and that Obrecki didn't get a good look at the dealer, such that Reynoso and Santiago could not have had probable cause to seize

7

Hill. I disagree. First, the informant's tip included more than a physical description; the tipster said that the man sold drugs on the street or in cars. This information was communicated to defendants and corroborated by Obrecki's surveillance. Second, the fragile basis for Obrecki's inference that Hill was the man he saw participating in the hand-to-hand drug deal was not communicated to Reynoso and Santiago—it is undisputed that Reynoso and Santiago knew only that the eyewitness (Obrecki) said Hill was "the correct person." *See* [75] at ¶¶26–27. This was enough to provide a fair probability that Hill was the dealer who had just committed the crime of drug distribution and was committing the crime of drug possession.

The apartment building was a large one, and Hill notes that it can't be the case that the police had probable cause to arrest every middle-aged black man of average weight and between 5′9″ and 6′1″ tall who walked out of the building. But that's not the question that was presented to defendants. They were instructed to seize the man they were told had just done a hand-to-hand transaction (that resulted in a recovery of drugs). If Obrecki had identified as the offender every man he saw exiting Hill's building, Obrecki's information might have become so suspect and unreliable as to not provide probable cause. But that would be a different case than the one presented here.

Hill also argues that there could not be probable cause where Obrecki did not order an arrest of Hill, he only ordered a "stop." *See* [63] at 7. Obrecki testified that after seeing Hill walk out of the building, Obrecki "kind of thought, well, it fits the

8

description of what information I received from the [informant], the only person that exited this building since this person entered that building, resembles that person. Let's do a street stop and do a contact card." [76] at ¶10. I agree with defendants that this testimony expresses Obrecki's internal thought processes, not what he said over the radio. Nevertheless, even assuming, for purposes of this motion, that Obrecki instructed his fellow officers to do something less than a full custodial arrest based on his subjective belief that his information didn't rise to the level of probable cause, that would not defeat summary judgment. Obrecki's subjective belief is irrelevant, *see Devenpeck*, 543 U.S. at 153, and the undisputed fact remains that he identified Hill to his fellow officers as the person Obrecki saw do the hand-to-hand deal. As an objective matter, that identification provided a prudent person with probable cause.

Since the officers had probable cause, they also necessarily had reasonable suspicion that justified a *Terry* stop. *See Ramos v. City of Chicago*, 716 F.3d 1013, 1017 (7th Cir. 2012) (*Terry* standard is less demanding than probable cause). The officers reasonably suspected that Hill, who matched the informant's description and had been identified by Obrecki, was involved in a crime and was worth investigating in order to dispel their suspicion. The use of handcuffs for less than 30 minutes, in the context of an investigation of drug dealing where the suspect was not keeping his hands in place as directed, falls within the scope of reasonable *Terry* seizures (putting to one side the search and force issues discussed below). *See*

9

*United States v. Smith*, 3 F.3d 1088, 1095–96 (7th Cir. 1993); *see also United States v. Bullock*, 632 F.3d 1004, 1014–16 (7th Cir. 2011).

Defendants' motion for summary judgment on Hill's seizure claim is granted.

## III. The Search Claim

Hill also alleges that the search of his person was unreasonable and unconstitutional, particularly because two to three[6] inches of his buttocks were exposed on a public street in daytime and his groin or crotch area was searched. Hill's description of the search is inconsistent, *see* [76] at ¶16, but I will assume for purposes of this motion that Reynoso reached inside Hill's pants, down to the crotch or groin area, during the search.

The "bright-line rule" is that "police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004) (citing *Gustafson v. Florida*, 414 U.S. 260 (1973), and *United States v. Robinson*, 414 U.S. 218 (1973)). Such searches reasonably include the body and clothing of the person seized. *Id.*

Taking Hill's version of the search as true, the scope of the search was reasonable as a search supported by probable cause to arrest Hill. Reaching into Hill's pants, exposing two to three inches of his buttocks in the process, and patting down the entirety of his body, is the kind of thorough search authorized by the constitution when police have probable cause to seize a person. Hill remained fully

---

[6] Hill testified that "several" inches of his buttocks were exposed, and defined "several" to mean two to three inches. [54-5] at 9 (Deposition of Hill at p. 106, ll. 3–4).

10

clothed throughout the encounter, and was not subjected to a search of his body cavities (which would require additional justification).

In *Stanley v. Henson*, 337 F.3d 961, 965–66 (7th Cir. 2003), a case relied on by Hill, the plaintiff's naked breasts were exposed during a search (she was not touched by the searching officials and the search was conducted in private). The court affirmed summary judgment in favor of the defendant officials based on the balancing of the minimal intrusion of the plaintiff's privacy against the justification for the search. Although not precisely on point, *Stanley* supports summary judgment in this case. As in *Stanley*, the exposure of Hill's body was rather minimal (even accepting Hill's version of events in the light most favorable to him); and police officers may touch the body of a person they have in custody pursuant to probable cause. *See Robinson*, 414 U.S. at 235 ("A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment . . . .").

Searches of intimate body parts conducted in public can be unreasonable, even if supported by probable cause or reasonable suspicion. *Campbell v. Miller*, 499 F.3d 711, 718–19 (7th Cir. 2007). But unlike *Campbell*, where an officer conducted a visual inspection of a suspect's anal area in public, *id.* at 715, the search here involved a brief exposure of two to three inches of Hill's buttocks as his pants were partially lowered, and his underwear remained largely in place. A jury could not

reasonably conclude that the scope of the search—incident to an arrest supported by probable cause—was unconstitutional.[7]

There is no dispute that defendant Santiago did not search Hill—only Reynoso did. Santiago cannot be liable for an unconstitutional search if he did not participate in it. *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (agents on scene did not participate in search and were therefore not liable); *see also Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (officer who did not arrest plaintiff could not be liable for false arrest claim). For this additional reason, Santiago is entitled to summary judgment.

Defendants' motion for summary judgment on Hill's search claim is granted.

## IV. The Excessive Force Claim

Hill's final claim against the defendants is that they used excessive force when handcuffing him. There is no genuine dispute that Santiago was not involved in the application of the force that hurt Hill, *see* n. 5 above, and Hill does not argue that Santiago is liable under a failure-to-intervene theory. *See Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012). Hill also testified that Santiago was quite cordial during the stop. Santiago is entitled to summary judgment on the excessive force claim.[8]

---

[7] The parties debate whether the search was constitutional if viewed as a *Terry* protective pat-down. If probable cause did not support the seizure, and it was solely based on reasonable suspicion, then a search for weapons could conceivably include a search inside the waistband of Hill's pants. But Hill's version of the search is more intrusive than a typical *Terry* pat-down. I cannot say as a matter of law at the summary judgment stage that the search was a permissible *Terry* search. Defendants are entitled to summary judgment for the reasons discussed in this opinion. The *Terry* rationale for the search is not one of them.

[8] Santiago is also entitled to summary judgment on the excessive force claim because, at most, he put one handcuff on Hill. He did not use handcuffs "in a manner that would clearly injure or harm a

Hill had a preexisting injury to his right wrist, [76] at ¶24, and when Reynoso twisted and brought the wrist behind Hill's back to place the handcuffs on him, Hill heard a pop and it hurt. Hill told Reynoso that he was hurting him. Hill demonstrated the handcuffing procedure during his deposition, and the demonstration—consistent with Hill's testimony that the movement was not extreme—depicts a routine handcuffing. [54] Exh. 11; [75] at ¶45.[9] Hill testified that the handcuffs were "extremely tight." [66-1] at 36 (Hill Deposition at p. 134, l. 3).

Excessive force claims are fact-specific and often not suitable for resolution at summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 778–79 (7th Cir. 2003). Citing *Pauley*, among other cases, Hill argues that a jury ought to decide whether Reynoso's use of handcuffs was unconstitutional. I disagree. The officers had probable cause to believe Hill had committed a drug crime, and thus, unlike the cases cited by Hill, where there was no probable cause for an arrest or the officers used tight handcuffs for a lengthy period of time in addition to the application of other force, the use of force here—handcuffs for under 30 minutes—was unquestionably reasonable.

Summary judgment is appropriate when the plaintiff did not elaborate on the extent of his pain from tight handcuffs, complained only once or twice, and did not alert the officer to any circumstances that made the plaintiff atypical from the usual

---

typical arrestee," and is therefore entitled to summary judgment. *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009).

[9] Unlike the video in *Scott v. Harris*, 550 U.S. 372 (2007), the video here did not depict the actual event at issue. The video is a demonstration by the plaintiff, done after-the-fact. Nevertheless, it is appropriate to view the video as the depiction of events from the non-movant's perspective.

13

arrestee. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304 (7th Cir. 2011); *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009). That is the case here. Hill complained once of pain, but did not elaborate. He was handcuffed for several minutes, but released relatively promptly. He did not tell the officers that he had a preexisting injury. He felt pain and sought treatment after the handcuffing, but nothing that Hill said to the officers put them on notice that Hill was atypical. I (and any jury) must view the objective reasonableness of the officer's conduct based on the information known to Reynoso when he was using force. The Constitution did not compel Reynoso to handle Hill any differently than he did.

Defendants' motion for summary judgment on the excessive force claim is granted.

## V. Qualified Immunity

My determination that there is no genuine factual dispute to suggest that Hill's constitutional rights were violated means the defendant officers are also entitled to summary judgment on the basis of qualified immunity. If the facts do not make out a violation of a constitutional right, judgment in favor of the defendants on the ground of qualified immunity is appropriate. *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

If the facts do make out a constitutional violation, defendants are immune from suit if that violation was not clearly established at the time of the violation.

*Pearson*, 555 U.S. at 232. In this case, defendants are also entitled to summary judgment under this second step of the qualified immunity analysis.

While it is true, as Hill points out, that the rights to be free from unreasonable seizures, searches, and force were all clearly established in June 2012, that high level of generality is not where the "clearly established" test operates. The right must be established in a more particularized, relevant sense. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (receded from by *Pearson*, 555 U.S. 223 (2009)). An officer is immune if a reasonable officer "could have believed" his conduct was lawful in light of clearly established law and the information possessed by the officer. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013).

Even if Reynoso and Santiago did not in fact have probable cause, they are cloaked in immunity because they arguably had probable cause. *Abbott*, 705 F.3d at 718. They did not know that Obrecki's identification of Hill was based more on inference than a clear view of the drug dealer, but reasonable officers could have relied on Obrecki's word. *See Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997) ("the actions of a police officer acting in reliance on what proves to be the flawed conclusions of a fellow police officer may be reasonable nonetheless and thus protected by the doctrine of qualified immunity").

Plaintiff identifies no case that establishes that a search—supported by arguable probable cause—that exposes two to three inches of the top of a suspect's buttocks while the waistband of the suspect's pants are searched is unconstitutional. Absent such clearly established law, a reasonable officer could

have believed that such a search was within the bounds of the Constitution. The scope of a permissible search necessarily involves a fact-specific balancing, and qualified immunity permits officers to make reasonable mistakes when approaching the constitutional line. At most, Reynoso made a reasonable mistake about the kind of search authorized by the Constitution.

Finally, Reynoso and Santiago are immune from the excessive force claim. In *Rooni v. Biser*, 742 F.3d 737, 743 (7th Cir. 2014), the Seventh Circuit held that the right to be free of a particular degree of force during handcuffing was not clearly established. As in *Rooni*, there is nothing in this case that would have alerted Reynoso "to the fact that a constitutional violation was looming," *id.*, when he handcuffed Hill, and Hill said it hurt. Like the arrestee in *Rooni*, Hill's handcuffs were tight and hurt and Hill sought treatment. The court held that summary judgment on qualified immunity grounds was appropriate. *Id.* So it is here.

Summary judgment for the individual defendants also leads to summary judgment for the City. Its liability is entirely dependent on the individual defendants' liability.

## VI. Conclusion

Hill was not the drug dealer the officers wanted, and he suffered the indignity of an intrusive, rude encounter with the police. While regrettable, the encounter was not an unconstitutional one for which defendants can be held liable. For the reasons discussed above, defendants' motion for summary judgment [55] is granted.

<table>
<tr><td></td><td>ENTERED:</td></tr>
<tr><td>Dated: 7/30/14</td><td>/s/ Manish S. Shah<br>MANISH S. SHAH<br>United States District Court Judge</td></tr>
</table>